[No. G002601. Fourth Dist., Div. Three. May 14, 1985.]

CHARLES S., Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
ORANGE COUNTY DEPARTMENT OF SOCIAL SERVICES,
Real Party in Interest.

COUNSEL

Judith E. Harding for Petitioner.

No appearance for Respondent.

Adrian Kuyper, County Counsel, and Susan Strom, Deputy County Counsel, for Real Party in Interest.

OPINION

**TROTTER, P. J.**—Petitioner seeks review of an order of the Orange County Superior Court, sitting as the juvenile court, denying him standing to participate in a permanency planning hearing regarding the future status of his 16-month-old grandson (Welf. & Inst. Code, § 366.25)[1] and terminating further visitation with the minor child. He claims his right to participate is predicated upon his status as grandparent, and that the trial court's action precluded the presentation of evidence vital to a determination of the child's best interests. We agree and issue a writ.

I.

Abel S. was born in Los Angeles on November 25, 1983, to Kathryn S., the daughter of Charles S., the petitioner herein. The identity of the child's father is unknown. At the time of Abel's birth, Kathryn was hospitalized for mental illness; thus, a section 300 proceeding was instituted in the Los Angeles Superior Court to declare the minor a dependent of the court. Jurisdiction over the matter was later transferred to the Orange County Superior Court, the Los Angeles court having learned Kathryn maintained her legal residence with her father in this county. And on May 29, 1984, Abel was declared a dependent of the juvenile court (§ 361, subd. (b)(1)), with custody vested in the department of social services (DSS).

At a June 21, 1984, contested placement hearing, the court approved a service plan recommending Abel's placement in a neutral foster home. By this time, Abel already had been placed in a foster home; however, because Charles had indicated a desire to have the child live with him, the case worker visited the grandfather's home (where Kathryn resided on an intermittent basis when she was not hospitalized) and personally observed hostility between Charles and Kathryn concerning the child's future plans.

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

The court approved another service plan at a six-month review hearing on November 15, 1984. It recommended, among other things, that the minor be continued a dependent child of the juvenile court. The accompanying report noted "[a]lthough [Charles] appears financially able to provide for the minor, he appears to be unaware of the emotional and developmental requirements of the minor, and his plans to have others meet these needs do not seem to reflect the best long term interests of the minor."

A permanency planning hearing was scheduled for March 26, 1985. The child was then 16 months old and Charles, with the court's approval, had been visiting with him on a regular weekly basis except for isolated occasions when he was out of town on business. Before the matter was assigned for trial, county counsel voiced an objection to Charles' standing to participate. In response, Charles' attorney made an appropriate oral motion, which was denied by the presiding judge "for failure to make a formal noticed motion for standing, and other things."[2] The motion was renewed in the trial court at the commencement of the hearing and was again denied, this time on the ground of res judicata. The trial judge, however, allowed Charles to remain silently at the counsel table during the course of the proceeding.

After hearing testimony of Kathryn and the case worker, the court found the minor to be adoptable pursuant to section 366.25, subdivision (d)(1), and that the conditions described in subparts (A), (B) and (C) did not exist.[3] The DSS was authorized to proceed to free the minor child from the custody and control of his parent, and county counsel was ordered to initiate an action pursuant to Civil Code section 232. The court also ordered "no visitation by mother or grandfather. If on June 21, 1985 [the date set for a

---

[2]According to the petition, the "other things" were not elucidated, despite Charles' attorney's request for clarification.

[3]Section 366.25, subdivision (d) provides, in pertinent part: "If the court determines that the minor cannot be returned to the physical custody of his or her parent or guardian and that there is not a substantial probability that the minor will be returned within six months, the court shall develop a permanent plan for the minor. In order to enable the minor to obtain a permanent home the court shall make the following determinations and orders: [¶] (1) If the court finds that the minor is adoptable, . . . the court shall authorize the appropriate county or state agency to proceed to free the minor from the custody and control of his or her parents or guardians pursuant to Section 232 of the Civil Code unless the court finds that any of the following conditions exist: [¶] (A) The parents or guardians have maintained regular visitation and contact with the minor and the minor would benefit from continuing this relationship. [¶] (B) A minor 12 years of age or older objects to termination of parental rights. [¶] (C) The minor's foster parents are unable to adopt the minor because of exceptional circumstances which do not include an unwillingness to accept legal responsibility for the minor, but are willing and capable of providing the minor with a stable and permanent environment and the removal of the minor from the physical custody of his or her foster parents would be seriously detrimental to the emotional well-being of the minor."

periodic review hearing], it appears mother's condition has stabilized, visitation will be reconsidered." Charles' writ petition followed.

## II.

█ Charles contends the trial court's refusal to grant him standing "foreclosed the one person who is related to the minor by blood and who has consistently maintained a relationship with the minor against formidable odds from making the court aware of an important source of love, care and understanding for this minor." Relying on *In re B.G.* (1974) 11 Cal.3d 679 [114 Cal.Rptr. 444, 523 P.2d 244], and *Katzoff* v. *Superior Court* (1976) 54 Cal.App.3d 1079 [127 Cal.Rptr. 178], he claims he has an automatic right to participate.

In *In re B.G.,* the trial court had allowed foster parents to participate as interested parties in a juvenile court proceeding solely because they had applied for letters of guardianship. The "unsatisfactory and ad hoc character" of that ruling prompted our Supreme Court to clarify "the unsettled state of the law respecting the standing in juvenile court of nonparents interested in the welfare of the minor . . . ." (*In re B.G., supra,* 11 Cal.3d at p. 692.) Viewing a foster parent as a "de facto" parent, i.e., a person "who, on a day-to-day basis, assumes the role of parent, seeking to fulfill both the child's physical needs and his psychological need for affection and care. . . ." (*id.,* at p. 692, fn. 18), the court determined "[t]he juvenile court in a dispositional hearing must undertake 'a judicious appraisal of all available evidence bearing on the child's best interests' including an evaluation of the relative merits of alternative custody awards. [Citation omitted.]" (*Id.,* at p. 693.) "[D]e facto parents . . . should be permitted to appear as parties in juvenile court proceedings. Their standing should not depend upon the filing of a petition for guardianship, although the filing of such petition may aid in attesting to their interest in the custody of the child . . . . [T]hey should be permitted to appear as parties to assert and protect their own interest in the companionship, care, custody and management of the child. [Fn. omitted]." (*Ibid.*)

In *Katzoff* v. *Superior Court, supra,* 54 Cal.App.3d 1079, after refusing to allow a two-year-old child's foster parents to testify at a dependency review hearing, the juvenile court authorized the child's removal to another foster home. Relying on *In re B.G.,* the appellate court stated: "If the participation of the foster parents, either through their testimony or by their presentation of other evidence, would have provided the court with relevant information as to [the child's] best interests, the court should have permitted their participation and considered the evidence presented. [Citation omitted.]" (*Katzoff* v. *Superior Court, supra,* at p. 1084.)

■ The DSS takes the position neither *In re B.G.* nor *Katzoff* is controlling because Charles is not a "de facto" parent. True, Charles did not maintain a day-to-day relationship with his grandson and therefore does not fit our Supreme Court's definition of the term. However, we think the rationale underlying the holding in *In re B.G.* is equally applicable to persons occupying Charles' status.[4] As noted in that case, "[t]he simple fact that a person cares enough to seek and undertake to participate goes far to suggest that the court would profit by hearing his views as to the child's best interests; if the participant lacks a close relationship with the child, that fact will undoubtedly emerge during the proceedings." (*In re B.G., supra,* 11 Cal.3d at p. 692, fn. 18.)

Charles informs us he attended all hearings pertaining to his grandson. Even if, as the DSS contends, he did not formally participate at *all* of those hearings, his presence alone is indicative of a desire to be involved in and informed of any plans made with respect to the child's future. To that end, he spent the entire day in court on March 26th waiting for an opportunity to participate. In contrast, Abel's foster parents, who clearly had standing to participate, did not testify nor were they even present at the hearing.[5] This suggests to us Charles' participation should have been permitted. Notwithstanding the limited nature of his weekly contact with the child, if what he has to say turns out *not* to be beneficial to a determination of the child's best interests, the trial court will soon know. And even in that event, we can perceive of no manner in which his participation could hamper the proceeding.

The DSS argues Charles has *already* been evaluated and rejected as an appropriate placement; however, this has no bearing on his right to participate at the permanency planning hearing. He is entitled to an opportunity to assert his position that neither an in-depth interview nor a formal evaluation of his home was conducted. The trial court's order will accommodate Abel's adoption and if successful Charles may be foreclosed permanently from *any* contact with his grandson. (See Civ. Code, § 229.) Thus, his need

---

[4]We reject, however, Charles' contention it was incumbent upon the trial court to view him as a parent or guardian for purposes of applying section 366.25, subdivision (d)(1). Acknowledging he is neither Abel's parent nor guardian, he argues the trial court was nonetheless required to make a specific finding the minor child did not benefit from continued visitation with his grandfather because "he has consistently requested that he be considered for placement . . ., and he has stated to all persons concerned . . . that he desires to become the guardian or the adoptive parent . . . ." His argument has no merit. "[A] de facto parent is [not] a 'parent' or 'guardian' as those terms are used in the Juvenile Court Law . . . ." (*In re B.G., supra,* 11 Cal.3d 679, 693, fn. 21.) Thus, since section 366.25 would not be applicable to a de facto parent, it could not be applicable to Charles.

[5]According to the petition, during a chambers conference county counsel revealed that the foster parents were not willing to adopt the child; the DSS does not dispute this representation.

to participate at this stage of the proceedings is even more compelling than before.

■ Finally, the DSS contends the trial court properly denied Charles' motion because he failed to comply with the statutory notice requirement of Code of Civil Procedure section 1010. It argues "[w]hen [Charles] failed to notice or calendar his motion for standing, he asked the court to make factual determinations without allowing [the DSS] the opportunity to prepare opposition in the form of witnesses and or case law." We disagree. Entitlement to standing under the circumstances presented is not a factual question. It is a matter of right which belongs to any blood relative who cares enough about the child's welfare to request the opportunity to participate.

As noted above, standing of the foster parents in *In re B. G.* was not dependent upon their filing of a petition for guardianship. Nor does Charles' standing to participate depend upon the filing of a noticed motion. A trial court should not restrict or prevent testimony on such formalistic grounds but rather should avail itself of all evidence which might bear on the child's best interests.

■ While we neither reach nor consider the merits of Charles' position regarding the adoptability of his grandson, it is obvious the trial court erred in denying him the opportunity to assert his own interest in the child's welfare. And since this error is one of law, we see no purpose to be served by issuing an alternative writ. (Code Civ. Proc., § 1088; see also *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178-179 [203 Cal.Rptr. 626, 681 P.2d 893].)

■ Let a peremptory writ of mandate issue directing the trial court to vacate its order of March 26, 1985 and to conduct a new permanency planning hearing at which petitioner is entitled to participate. If feasible, the permanency planning hearing may be scheduled for June 21, 1985, the date currently set for a periodic review hearing, which hearing date is otherwise vacated. Pending the permanency planning hearing, petitioner shall be permitted to visit with his grandson in accordance with the schedule in effect prior to the March 26, 1985 hearing.

Wallin, J., and Woolley, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.