[No. G004106. Fourth Dist., Div. Three. Aug. 28, 1986.]

CHRISTINA K., Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
ORANGE COUNTY SOCIAL SERVICES AGENCY et al.,
Real Parties in Interest.

1464

COUNSEL

Christian R. Van Deusen for Petitioner.

No appearance for Respondent.

Adrian Kuyper, County Counsel, and Wanda S. Florence, Deputy County Counsel, Ronald Y. Butler, Public Defender, Frank Scanlon, Assistant Public Defender, Richard Aronson and Thomas Havlena, Deputy Public Defenders, for Real Parties in Interest.

**OPINION**

**SONENSHINE, J.**—We review a foster parent's right to standing to participate as a party in a Welfare and Institutions Code section 366 status review hearing.[1] We conclude although a foster parent has no absolute right to standing the court here abused its discretion in refusing this petitioner's request.

Crystal H. was born on July 21, 1984, and was taken into protective custody in May of 1985. Two months later, in July, her sister Cecelia H. was born and also placed in protective custody. In September both came to live in the petitioner foster mother's home. That same month section 300, subdivision (a) petitions were sustained. Custody remained with Christina K., the foster mother.

Subsequently, Christina K. received notice of a section 366.2 review hearing and filed a report as permitted by section 366.2, subdivision (d).[2] Christina K., represented by counsel, also appeared at the hearing on March 25, 1986, seeking an ex parte order giving her standing to participate in the proceeding. The juvenile court, commenting it "would not be appropriate," denied her request. Christina K. now seeks a writ of mandate commanding the juvenile court to grant her standing in these dependency matters and all other matters within its jurisdiction pertaining to these minors.

I

We initially note the issue is moot. The hearing was concluded in March and this writ was not filed until May 14.[3] Moreover, we cannot consider petitioner's request to order the juvenile court to grant her standing in *future* proceedings.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] Section 366.2, subdivision (d) reads in pertinent part: "[P]rior to any such hearing involving a minor in the physical custody of a foster parent, the foster parent may file with the court a report containing its recommendation for disposition. The court shall consider any such report and recommendation prior to determining any disposition."

[3] The petitioner alleges she immediately requested a transcript of the proceedings but it was denied. We *ordered* a transcript to be prepared. It was filed on July 1.

Nevertheless, "this case thus 'poses an issue of broad public interest that is likely to recur,' [and] we exercise what has been described as our 'inherent discretion to resolve [the] issue.' [Citation.]" (*United Farm Workers of America* v. *Superior Court* (1975) 14 Cal.3d 902, 906 [122 Cal.Rptr. 877, 537 P.2d 1237].) Judicial "'consideration ought not to be . . . defeated by short term orders, capable of repetition, yet evading review. . . .'" (*Id.*, at p. 907.)

## II

■ We invited responses to Christina K.'s petition. Counsel for the minors states the minors "have no objection to the petitioner's [*sic*] being granted standing . . . ." The Orange County Social Services Agency believes a "substantial" lapse of time is required before a temporary care nonparent can become a de facto parent and (apparently) that only those who have been de facto parents well in excess of six months (e.g., for a period of one year or more) are entitled to participate in a status review hearing. Hence, it opposes Christina K.'s request for relief. ■ Similarly, the biological father (represented by the Orange County Public Defender) believes "[i]t would subvert the legislative intent to encourage reunification [with the biological parents] if a foster parent could successfully claim standing as a de facto parent *before* the time for reunification has passed."

In *In re B.G.* (1974) 11 Cal.3d 679, 692 [114 Cal.Rptr. 444, 523 P.2d 244], our Supreme Court wrestled with this same issue: ". . . the problem of the standing of the foster parents in this litigation."[4] The court first observed "[t]he superior court ruled that since the foster parents had applied for letters of guardianship, they could participate as interested parties in the juvenile court proceedings. The Court of Appeal ruled that the foster parents were not parties to the appeal, but permitted their counsel to argue the case as amicus curiae; we [have] followed the same practice." (*Id.*, at p. 692.) "But the unsatisfactory and ad hoc character of these rulings, and the unsettled state of the law respecting the standing in juvenile court of nonparents interested in the welfare of the minor, demonstrates the need for clarification by this court." (*Ibid.*) The court "conclude[d] that de facto parents, such as the foster parents in this case, should be permitted to appear as parties in juvenile court proceedings. Their standing should not depend upon the filing of a petition for guardianship, although the filing of such petition may aid in attesting to their interest in the custody of the child; nor

---

[4]In *In re B.G.*, *supra*, 11 Cal.3d 679, a section 300 petition had been sustained. The children were placed in a foster home. The mother appeared for the first time at the second annual review hearing. The trial court denied the foster parents' standing to participate in the proceeding.

should their participation be restricted to the limited role of an amicus curiae; they should be permitted to appear as parties to assert and protect their own interest in the companionship, care, custody and management of the child." (*Id.*, 11 Cal.3d at p. 693, fn. omitted.)

In other words, a de facto parent has standing in these proceedings. But that does not end our analysis. We still must determine if all foster parents are de facto parents. *In re B.G.* foresaw this question: "We anticipate that juvenile courts will experience little difficulty in determining whether a person is a de facto parent for purposes of standing to appear in a juvenile court custody proceeding." (*Id.*, at p. 692, fn. 18.) Unfortunately, optimism in determining the answer was misplaced. But, the court did provide guidance: "The simple fact a person cares enough to seek and undertake to participate goes far to suggest that the court would profit by hearing his views as to the child's best interests; if the participant lacks a close relationship with the child, that fact will undoubtedly emerge during the proceedings." (*Id.*, at p. 692, fn. 18.)

Thus, the Supreme Court did not conclude all foster parents are de facto parents and therefore have standing. However, it clearly stated the juvenile courts are to give serious consideration to any foster parent's request for standing.[5] And if a foster parent *is* a de facto parent, *In re B.G.* holds the foster parents have a right to standing.

 The Social Services Agency suggests there is a time requirement that must be met before a foster parent can qualify as a de facto parent: "Some substantial lapse of time is required to transform a temporary care giver into a de facto parent." But none of the cases relied on by either of the real parties in interest supports this conclusion. As our foregoing discussion suggests, the court in *In re B.G.* emphasized the quality of the relationship, not its duration.

In *Katzoff* v. *Superior Court* (1976) 54 Cal.App.3d 1079 [127 Cal.Rptr. 178], the court reversed a trial court's refusal to allow foster parents standing. Again, the court did not rely on the length of time the children had spent in the home. Instead it emphasized "[t]he paramount concern of [the] court . . . should be the best interests of [the child] . . . ." (*Id.*, at p. 1085.) To that end it is "require[d] that the [trial] court at least allow the foster parents to present their side of the case, and that the court rely on competent evidence presented to it, not merely on the allegations of counsel, before ruling on the case." (*Id.*, at p. 1085.)

---

[5] As footnote 18 in *In re B.G.*, *supra*, 11 Cal.3d at page 692 suggests, the court can discount any testimony received if it finds, after granting standing, there is not in fact a significant relationship.

In *Perez* v. *Department of Health* (1977) 71 Cal.App.3d 923 [138 Cal.Rptr. 32], the court considered relatives' rights to standing in a contested paternity proceeding. The court concluded the petitioners were de facto parents and thus were proper parties. In making such a determination the court made no reference to the length of time the children had spent with their relatives. Rather, the court focused on the test enunciated in *In re B.G.* and "[t]he uncontradicted showing in the affidavits . . . . The trial court gave this fact limited recognition when it awarded [the petitioners] visitation rights . . . ." (*Id.* at p. 927.)

Time, in and of itself, does not determine whether foster parents are de facto parents. It is the information and interest they have to contribute to the proceedings which allows them standing. The Supreme Court recognized "[t]he juvenile court in a dispositional hearing must undertake 'a judicious appraisal of all available evidence bearing on the child's best interests . . . .'" (*In re B.G., supra,* at p. 693.)

■ Nor do we believe granting standing to a foster parent before the reunification time has passed is contrary to legislative intent. Real parties in interest argue public policy mandates there must be good faith efforts to reunite the family. They cite section 396 which emphasizes ". . . the policy of the Legislature [is] foster care should be . . . temporary . . . ."

In other words, they allege reunification is the goal after a section 300 petition has been sustained and before permanent placement has commenced. Foster care is only meant to be a means of properly caring for the child *temporarily* until the child can be returned to the parents or permanently placed. We agree.

The legislative policy is as real parties in interest suggest. Reunification is the goal.[6] Real parties in interest argue granting standing to temporary foster parents could only work against the goals of the statute. We cannot agree.[7]

---

[6]Christina K. does not contest this obvious statutory goal. However, as argued to the juvenile court, the motion was not filed "in an attempt to prejudice the eventual disposition. . . . It may well be that the court will determine that . . . reunification [is] possible, or that a proper placement is with the grandparent in another state." She wished standing only to aid the court in making a proper placement for the children.

[7]We do, however, appreciate the judge's concern. The record indicates the children were placed with Christina K. pending an investigation of the out-of-state grandmother's home. Moreover, the juvenile court judges daily encounter many such dilemmas. The Legislature clearly announced its desire for reunification. The statutory scheme is replete with methods by which this is to be accomplished, all requiring untold court hearings. And yet the funding has never been adequate to truly accomplish the well intended results.

The law mandates reunification occurs only after "the trial court first determines that parental custody would [not] be harmful to the child . . . ." (*Katzoff* v. *Superior Court, supra,* 54 Cal.App.3d 1079, 1083.) Foster parents, because of their caretaking role, are usually the ones best equipped to aid the court in this determination. Rather than defeating legislative intent, foster parents' participation in the proceeding can in fact effectuate it.[8]

Moreover, we note the statutory scheme was enacted long after *In re B.G.* was decided. The Legislature was therefore aware of its holding. Rather than legislate away a foster parent's right to participate, the statutes in fact amplify it. Under section 366.2, subdivision (b), a foster parent *must* receive notice of a status review hearing. Once noticed, the foster parent may submit a report to the court. (§ 366.2, subd. (d).) Thus, a foster parent who is not a de facto parent, or one who simply does not wish to be a party, may still contribute to the proceeding.

We recognize that when foster parents are de facto parents they have a right to standing in all dependency proceedings. We do *not* hold, however, all foster parents have such a constitutional or statutory right. The juvenile court must determine if the foster parents have cared for the minor on a day-to-day basis. Time is not the criterion for determining whether a foster parent is a de facto parent. The court should also consider the unique vantage point of the foster parents vis-à-vis the information they are able to provide to the court.

Here, the juvenile court erred when it *summarily* denied Christina K.'s request to participate in the proceedings.[9] One of the children had been in her care almost since birth. As Christina K.'s counsel argued to the juvenile court, she "probably knows more about the children than anybody else at this stage of the game." The court should have had the benefit of her knowledge.

---

[8]Real parties in interest rely on *Brown* v. *County of San Joaquin* (E.D.Cal. 1985) 601 F.Supp. 653 where the court decided "whether a foster parent, a foster child, or both, is entitled to procedural due process before a county welfare department removes the child from the home . . . ." (*Id.,* at p. 655, fn. omitted.) They cite selected passages to support their arguments: "California law recognizes and affords protection to the interest of foster parents and foster children in an enduring relationship only once the goal of reunification has largely been abandoned in favor of finding a permanent and stable home for the child." (*Id.,* at p. 659.) But they ignore other language in the opinion: "[F]oster parents . . . [have] a right to participate fully in all juvenile court proceedings affecting the placement of the child, including the status review hearing which occurs within six months of the original order . . . ." (*Id.,* at p. 660.) *Brown* supports our conclusion.

[9]We note her request was ex parte and allegedly did not satisfy procedural requirements. We need not address the propriety of an ex parte request, but we do assume a properly noticed motion would be preferable.

For reasons earlier stated, the petition for writ of mandate is denied. However, future requests by foster parents for standing to participate in dependency proceedings should be determined in accordance with the views expressed in this opinion.

Trotter, P. J., and Wallin, J., concurred.