235 Cal.App.3d 1445 (1991)
1 Cal. Rptr.2d 473
In re RACHAEL C., a Person Coming Under the Juvenile Court Law.
BUTTE COUNTY CHILD PROTECTIVE SERVICES, Plaintiff and Respondent,
v.
JOY C., Defendant; CONNIE S. et al., Movants and Appellants.
Docket No. C008474.
Court of Appeals of California, Third District.
November 13, 1991.
*1447 COUNSEL
Steven B. Solomon, under appointment by the Court of Appeal, for Movants and Appellants.
*1448 Robert A. Glusman for Plaintiff and Respondent.
OPINION
SPARKS, Acting P.J.
In this case we consider the right of parties having the physical custody of a minor to participate as de facto parents in the dispositional hearing phase of a dependent child proceeding.
Connie and Wayne S. appeal from a dispositional order of the juvenile court stemming from a hearing in which they were not allowed to participate as de facto parents. Appellants contend that the court erred in failing to accord them the status of de facto parents, and by failing to inform them of their rights, and that the dispositional orders were based upon inadmissible hearsay. We conclude that the court erred in denying the status of de facto parents to the appellants. Accordingly, we shall reverse the order of the juvenile court.

BACKGROUND
Appellants are not the biological parents of Rachael, the minor child, nor do they have officially recognized legal status, such as that of guardians or foster parents. However, it appears that for the first nine months of her life the child's mother, Joy C., left her in the care and custody of the appellants. Joy left a handwritten note with Connie purporting to give her "all rights as guardian" of the child. Appellants gave the child the name Shammay S., and began caring for her as though she were their own child.
On June 30, 1989, the child was removed from appellants' custody when police officers discovered methamphetamine in appellants' home and, more particularly, around the child's dresser and bottle liners. It is alleged that a subsequent blood test revealed the presence of amphetamines in the child's system.
Dependent child proceedings were instituted using the name Shammay S. for the child and listing appellants as the parents. (Welf. & Inst. Code, § 300, subd. (b) & (g).) Eventually Butte County Child Protective Services (hereafter the county), discovered cause to believe appellants were not the child's natural parents and moved for blood testing to establish parentage. Appellants then admitted that they are not the child's natural parents. An amended petition was filed setting forth the circumstances of the removal of the child *1449 from appellants' custody and stating that reasonable efforts to locate the child's natural parents had been unsuccessful.
On September 29, 1989, at a hearing which neither appellants nor the natural parents attended personally or through counsel, the court sustained the jurisdictional petition. A dispositional hearing was scheduled for October 13, 1989. On that date the appellants appeared but the county contested their standing to participate. The trial court continued the matter and appointed counsel to represent appellants on the question whether they should be accorded the status of de facto parents. When the matter came on for hearing, the county requested a continuance in order to obtain a psychological evaluation. At that time the court tentatively denied de facto parent status to appellants, subject to reconsideration after the psychological evaluation. There followed several more continuances.
Eventually the court took up the matter of the dispositional hearing without appellants' participation but with the express understanding that they would be allowed to reopen and litigate disposition if they should be determined to have de facto parent status. Two weeks later the court denied de facto status to appellants. In ruling the court said: "I'm sorry I'm going to rule the way I am. [¶] I have all the empathy for all these two people. The fact they have been there and they care for the child. [¶] Based on the law as I have reviewed it and based on the psychological evaluation, I just can't find legally they're entitled to de facto status. [¶] I feel badly for them. I feel that's the status. [¶] I'm going to deny them de facto status which would deny them standing in these proceedings."

DISCUSSION
The concept of a de facto parent arose in In re B.G. (1974) 11 Cal.3d 679 [114 Cal. Rptr. 444, 523 P.2d 244]. There the children of a foreign refugee were placed in foster care after the death of their father. Their mother, who remained a foreign national, sought to regain custody. The primary holding in In re B.G., was that an award of custody to a nonparent requires a finding that an award to a parent would be detrimental to the child. In its discussion the court touched briefly upon the standing of the foster parents in the proceedings. It appeared that the juvenile court had permitted the foster parents to appear as parties. In the Court of Appeal and in the Supreme Court the foster parents had not been permitted to appear as parties but their counsel had been permitted to argue the case as amicus curiae. The Supreme Court concluded that the unsatisfactory and ad hoc nature of these rulings demonstrated the need for clarification. (Id. at p. 692.)
*1450 The high court said: "We conclude that de facto parents, such as the foster parents in this case, should be permitted to appear as parties in juvenile court proceedings. Their standing should not depend upon the filing of a petition for guardianship, although the filing of such a petition may aid in attesting to their interest in the custody of the child; nor should their participation be restricted to the limited role of an amicus curiae; they should be permitted to appear as parties to assert and protect their own interest in the companionship, care, custody and management of the child." (In re B.G., supra, 11 Cal.3d at p. 693.) (1) The court used the term "`de facto parent'" to refer to someone who "on a day-to-day basis, assumes the role of parent, seeking to fulfill both the child's physical needs and his psychological need for affection and care." (Id. at p. 692, fn. 18.) The court noted that the simple fact that a person cares enough to seek to participate goes far to suggest that the juvenile court would benefit by hearing his views as to the child's best interests, and that if the participant lacks a close relationship with the child that fact would undoubtedly emerge during the proceedings. (Ibid.)[1]
The high court's decision in In re B.G. has spawned a series of appellate decisions. In Katzoff v. Superior Court (1976) 54 Cal. App.3d 1079 [127 Cal. Rptr. 178], a dependent child was placed in foster care with the Katzoffs where he remained for approximately 21 months. On request of the welfare department and without allowing the foster parents to participate, the juvenile court authorized the placement of the child in another home. The Court of Appeal said: "It is clear that there are several areas of factual disputes upon which the court could have received evidence. The court merely heard the arguments of counsel, laden with factual assertions of a testimonial nature, and proceeded to rule in favor of the department." (Id. at p. 1085.) The court held that this was contrary to the decision in In re B.G.: "If the participation of the foster parents, either through their testimony or by their presentation of other evidence, would have provided the court with relevant information as to [the child's] best interests, the court should have permitted their participation and considered the evidence presented." (54 Cal. App.3d at p. 1084.)
In Charles S. v. Superior Court (1985) 168 Cal. App.3d 151 [214 Cal. Rptr. 47], the court applied the rationale of the decision in In re B.G. to a person who did not meet the definition of a de facto parent. There, the grandfather of a dependent child sought but was denied permission to participate in a permanency planning hearing. Although the grandfather was not a de facto *1451 parent since he had not maintained a day-to-day relationship with the child, the Court of Appeal concluded that he should be allowed to participate in the proceeding. For one thing, the grandfather had a compelling interest in participation since the proceeding could result in an order which would foreclose him from further contact with his grandson. Moreover, "[a] trial court should not restrict or prevent testimony ... but rather should avail itself of all evidence which might bear on the child's best interests." (Id. at pp. 156-157.) The court noted, however, that neither a de facto parent nor a grandfather is entitled to be considered a "parent" or "guardian" for purposes of the Juvenile Court Law. (Id. at p. 156, fn. 4.)
In Christina K. v. Superior Court (1986) 184 Cal. App.3d 1463 [229 Cal. Rptr. 564], a foster mother sought de facto parent status with respect to a review hearing. The county agency asserted that a person should not be considered a de facto parent until a "substantial" time had passed, meaning a period well in excess of six months. (Id. at p. 1466.) The natural father asserted that a nonrelative should not be considered a de facto parent until the time for reunification with the child's natural parent had passed. (Ibid.) The Court of Appeal concluded that the juvenile court erred in failing to recognize the foster mother as a de facto parent. The court held that time alone does not determine whether a person is a de facto parent. Rather, it is the information and interest the person has to contribute to the proceedings. (Id. at p. 1468.) The court said: "The juvenile court must determine if the foster parents have cared for the minor on a day-to-day basis. Time is not the criterion for determining whether a foster parent is a de facto parent. The court should also consider the unique vantage point of the foster parents vis-a-vis the information they are able to provide to the court." (Id. at p. 1469.)
In In re Joshuia S. (1988) 205 Cal. App.3d 119 [252 Cal. Rptr. 106], the court considered the standard of proof applicable to a de facto parent determination. The court rejected a claim that clear and convincing evidence is required and concluded that the preponderance of the evidence standard is applicable. (Id. at p. 125.)
The matter of de facto parents is now dealt with in the California Rules of Court (further references to rules will be to the California Rules of Court). Rule 1401(a)(4) provides: "`De facto parent' means a person who has been found by the court to have assumed, on a day-to-day basis, the role of parent, fulfilling both the child's physical and psychological needs for care and affection, and who has assumed that role for a substantial period." Rule 1412(e), provides: "Upon a sufficient showing the court may recognize the child's present or previous custodians as de facto parents and grant standing to participate as parties in disposition hearings and any hearing thereafter at *1452 which the status of the dependent child is at issue. The de facto parent may: [¶] (1) Be present at the hearing; [¶] (2) Be represented by retained counsel or, at the discretion of the court, by appointed counsel; [¶] (3) Present evidence."
(2a) Several points can be derived from these authorities. First, a juvenile court should not refuse to permit a person to appear as a de facto parent out of fear that such participation will unduly interfere with the proceedings or with the goal of providing the child with a stable and loving home. (Charles S. v. Superior Court, supra, 168 Cal. App.3d at p. 156.) (3a) De facto parents are not equated with biological parents or guardians for purposes of dependency proceedings and standing to participate does not give them all of the rights and preferences accorded such persons. (In re Jamie G. (1987) 196 Cal. App.3d 675, 677 [241 Cal. Rptr. 869]; In re Joshuia S., supra, 205 Cal. App.3d at p. 122.) And a court may discount the testimony and evidence of a de facto parent if it should later appear that the relationship is not significant and substantial. (Christina K. v. Superior Court, supra, 184 Cal. App.3d at p. 1467, fn. 5; In re B.G., supra, 11 Cal.3d at p. 692, fn. 18.)
(2b) Second, in making the difficult decisions which it must make, a juvenile court can only benefit by having available to it all relevant information, including such information as a de facto parent may be able to present. (Christina K. v. Superior Court, supra, 184 Cal. App.3d at p. 1469.) A person who has undertaken the day-to-day responsibility and care for a child will often be in a unique position to present relevant information. (Ibid.)
Third, the decision whether to grant de facto parent status cannot ignore the de facto parent's personal interest in the companionship, care, custody and management of the child, and thus cannot focus solely upon the child and the views of the government as to the child's best interests. As the court noted in In re B.G., supra, 11 Cal.3d at pages 692 and 693, the interest of a de facto parent is substantial and has been statutorily sanctioned and judicially recognized. A de facto parent may have a compelling need to participate because the proceeding may well result in an order permanently foreclosing any future contact. (Charles S. v. Superior Court, supra, 168 Cal. App.3d at pp. 156-157.) As a corollary of this point, it may be noted that a de facto parent's interest and concern may transcend the mere question of custody. Accordingly, a de facto parent should not be denied participation merely because it appears unlikely that he or she may be awarded permanent custody. (Christina K. v. Superior Court, supra, 184 Cal. App.3d at pp. 1468-1469; Charles S. v. Superior Court, supra, 168 Cal. App.3d at p. 156; Katzoff v. Superior Court, supra, 54 Cal. App.3d at pp. 1084-1085.)
*1453 Fourth, there is no requirement of contemporaneity in the determination of de facto parent status. (Rule 1412(e).) A person need not be a child's current or immediately succeeding custodian to be regarded as a de facto parent. (Ibid.) Thus, a person will not necessarily lose the status of de facto parent merely because the child has been removed from his or her custody. This should be particularly true where the reason for the loss of custody is the very proceeding in which the de facto parent wishes to appear.
(4) When we apply these points to this case we are satisfied that the juvenile court erred in failing to accord de facto parent status to appellants. The trial court appeared to rely exclusively upon the parent-child interaction assessment by a clinical psychologist which was performed in December 1989. There, the psychologist opined that the child's more significant bond was with her foster mother. However, as appellants point out, at that time the child had been removed from their custody for over five months, a period which is likely to have minimized the bonding that might be observed in a brief visit. (See Wald, State Intervention on Behalf of "Neglected" Children: Standards for Removal of Children from Their Homes, Monitoring the Status of Children in Foster Care, and Termination of Parental Rights (1976) 28 Stan.L.Rev. 625, 695.) And, as we have pointed out and contrary to the county's repeated insistence, a psychological bonding analysis is not the sole criterion to be considered.
In making its ruling the juvenile court virtually found appellants to be de facto parents when it said: "I have all the empathy for all these two people. The fact they have been there and they care for the child." For the first nine months of the child's life, appellants were her sole custodians and caretakers. They raised her like she was their own child. This is the assumption of the role of parent on a day-to-day basis for a substantial period of time. Appellants obviously acquired an interest in the companionship, care, custody and management of the child and are in a unique position to provide information about the child and her early life. Moreover, the constancy with which they attended the proceedings in an effort to participate bespeaks volumes about their concern and interest in the child. (See In re B.G., supra, 11 Cal.3d at p. 692, fn. 18; Charles S. v. Superior Court, supra, 168 Cal. App.3d at p. 156.) This is a sufficient showing to entitle appellants to participate as de facto parents.
It appears that the denial of de facto parent status to appellants resulted in the type of proceeding which the law seeks to avoid. In short, since the child's natural parents had abandoned her and did not appear, the court was placed in the position of simply rubber-stamping the social worker's factual assertions and recommendations without an opportunity to resolve disputed factual questions or to obtain other evidence. (See Katzoff v. Superior Court, *1454 supra, 54 Cal. App.3d at p. 1085.) It also appears that appellants had information that could have been relevant to the court's decisions. For example, Wayne maintains that the child was born a heroin-addicted baby and "We drug that baby through hell. I pulled it through all the drug stuff that her mother was giving her and brought her out of it."
Since appellants were erroneously excluded from participating in the dispositional hearing we have concluded that the dispositional order must be reversed. We will not reverse the court's jurisdictional order. (3b) Rule 1412(e) provides that a de facto parent is entitled to participate in disposition hearings and any subsequent hearing. The rule does not provide de facto parents the right to participate in jurisdictional hearings, nor do the decisional authorities suggest they have such a right.
We find it unnecessary to address appellants' contention that the juvenile court failed to advise them of their rights. As we have noted, de facto parents do not have all of the rights and preferences which are accorded natural parents and guardians. On remand that trial court may undertake to explain the rights which are accorded by de facto parent status. Our conclusion also renders it unnecessary to consider appellants' contention that the dispositional order was based on inadmissible hearsay since on remand appellants may participate and make appropriate objections.
(5) We finally address the contention of the county that this appeal is not properly before us. The county asserts that it is at least questionable whether appellants can maintain this appeal in view of rule 1435(b), which provides: "In proceedings under section 300, the petitioner, child, and the parent or guardian may appeal from any judgment, order, or decree specified in section 395. An order under section 366.25 authorizing the filing of a petition under Civil Code section 232, or the initiation of a guardianship proceeding, is not an appealable order. All appellants are entitled to representation by counsel and, if indigent, the child and parent or guardian may have counsel appointed by the reviewing court." The county points out that a de facto parent is not one of the parties specified in rule 1435(b).
We reject the county's suggestion. First, Welfare and Institutions Code section 395 provides in relevant part: "A judgment in a proceeding under Section 300 may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment...." It is a general rule that an order denying a person the right to participate in a proceeding is an appealable order. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 50, pp. 74-75.) It would follow that an order denying a person the right to participate in a juvenile proceeding as a de facto parent would be appealable under Welfare and Institutions Code *1455 section 395. Second, the decision in In re B.G. was specifically concerned with the de facto parents' status as parties to the appeal. (Supra, 11 Cal.3d at p. 692.) The court concluded that de facto parents should be allowed to participate as parties in the proceedings, including the appeal. To the extent that rule 1435(b) would preclude de facto parents from participating in an appeal it is more restrictive than the decision in In re B.G. and section 395 of the Welfare and Institutions Code and is therefore to that extent void. We are satisfied that appellants have properly sought appellate review. We intimate no opinion whether de facto parents should be accorded all of the rights of a parent or guardian, such as the right to appointed counsel and free transcripts.

DISPOSITION
The dispositional order of the trial court is reversed, and the matter is remanded for further proceedings in which the appellants shall be entitled to participate as de facto parents.
Sims, J., and Davis, J., concurred.
NOTES
[1] In that case, the court did not hold that a de facto parent is a parent or guardian as those terms are used in the Juvenile Court Law, and the court did not express an opinion whether principles of due process and equal protection would require that in some instances a de facto parent receive rights of notice, hearing, or counsel.