OPINION
Here we hold that the juvenile court acted within its jurisdiction by granting Gary A. (Gary) continuing visitation rights in his status as a de facto parent to Robin N.
 FACTS
On December 5, 1988, the San Luis Obispo County Department of Social Services (Department) filed a petition requesting that Robin N. (Robin) be *Page 1142 
declared a dependent child of the juvenile court under Welfare and Institutions Code section 300, subdivision (a). The petition alleged that the minor's mother, Mary N. (Mary) suffers from episodes of intense depression during which she behaves irrationally and causes the minor severe emotional trauma rendering her incapable of providing proper and effective parental care of Robin.
The petition further alleged that extensive preplacement services had been provided and were insufficient to protect Robin, and that the identity of Robin's biological father was unclear and his whereabouts were unknown.
Gary has cared for Robin his entire life. Gary was present in the delivery room when Robin was born, and his name appears on Robin's birth certificate. Although it has been determined that Gary is not Robin's father, Mary initiated a coguardianship in Santa Cruz County on Gary's behalf to ensure for Robin's care. Robin calls Gary "Dad" and Gary frequently spends long periods of time with Robin.
At a contested detention hearing held on December 16, 1988, the juvenile court found that "there is a prima facie showing that Gary [A.] has standing as a de facto parent and may participate in all hearings except the jurisdictional hearing."
On December 21, 1988, the court ordered Robin detained because: 1. He is suffering severe emotional damage as a result of the chaotic situation the mother is in, 2. he is emotionally upset, and 3. there are no reasonable means to protect him. The court ordered the child placed in a suitable receiving or foster home, but granted Gary substantial unsupervised visitation during most of the holiday season.
On January 19, 1989, the court took jurisdiction over the matter, sustained the petition, held a dispositional hearing and ordered the minor removed from Mary's custody and placed in an appropriate foster home.
By August 10, 1989, Bruce D., Robin's biological father, had been located. He was not sure he was Robin's father, but he wanted to discuss the situation with Mary.
On March 2, 1990, the court denied Mary's petition to terminate jurisdiction and to dismiss the case, finding that the conditions which existed at the time the court took jurisdiction of the case still existed. The petition admitted that the "`experts' in this case indicate the continued involvement of Gary [A.] in the minor's life is in the minor's best interests." Mary's petition for rehearing was denied. *Page 1143 
The court amended the case plan pursuant to a contested hearing on the matter. Among other things, the court accepted an agreement among the parties and ordered "free access and unstructured phone calls between the minor and Gary [A.]" The court also ordered substantial periods of visitation to Gary.
On April 12, 1990, the Department filed a supplemental and subsequent dependency petition with the court. Among other assertions, the petition stated that Mary and Gary "both suffer from significant emotional problems which periodically render each of them incapable of meeting ROBIN'S needs." The concerns primarily centered on arguments over visitation. On June 15, 1990, the court sustained the petition. Robin resided with Mary since August 2, 1990.
At a contested dispositional hearing held August 31, 1990, the court found that Gary comes within the meaning of Welfare and Institutions Code section 388 and therefore is a "parent or other person having an interest in a child who is a dependent child. . . ." Because of Gary's relationship with Robin, the court stated that it will consider information provided by Gary for Robin's best interests.
Because substantial conjoint therapy among the parties apparently rendered them more able to resolve visitation issues, the therapist, Doctor Pollard, recommended that the case be dismissed so that they could resolve visitation issues among themselves.
On March 14, 1991, the court convened a special hearing on custody and visitation. All parties to the proceeding agreed to the recommendation of the Department to dismiss the case. On April 15, 1991, the court dismissed the case, granted Bruce D. and Mary joint legal and physical custody of Robin, with Mary to have actual physical custody subject to a visitation schedule set forth in the order.
The court ordered a three-way rotational schedule of visitation among Mary, Bruce D. and Gary for summers, Easter and Christmas, holidays and weekends. The court lodged its proposed findings of fact. Among other things, the court found that Gary "has been recognized throughout the dependency proceedings as Robin's de facto father. . . . Gary [A.] has always been, and continues to be, Robin's psychological father. It is imperative for Robin's emotional well being and growth that Gary [A.] have continuing, regular and significant contact with Robin." Although there remains "ongoing friction between Mary [N.] and Gary [A.]" which "has caused significant and continuing damage to Robin's sense of security and *Page 1144 
emotional growth . . ., [n]onetheless, Robin is very attached to both of them and contact with each of them is necessary for his best interests."
Lastly, the court found that "Bruce [D.] is willing to be involved in Robin's life. He is supportive of Mary [N.] and acts to buffer her from contacts with Gary [A.]. He is supportive of Gary['s] role in Robin's life and acts to support and facilitate that role." The court denied Mary's application for rehearing. Mary appeals.
 DISCUSSION
A "de facto" parent is "a person who has been found by the court to have assumed, on a day-to-day basis, the role of parent, fulfilling both the child's physical and psychological needs for care and affection, and who has assumed that role for a substantial period." (Cal. Rules of Court, rule 1401(a)(4).)
(1) Mary contends that Gary's status as a de facto parent should have been terminated when the court sustained the supplemental petition as to both Mary and Gary. She argues that sustaining the petition established that Gary no longer fulfills Robin's psychological needs.
In Charles S. v. Superior Court (1985) 168 Cal.App.3d 151
[214 Cal.Rptr. 47], even though petitioner grandfather, unlike Gary, did not maintain a close, day-to-day relationship with his grandson and therefore failed to meet the literal definition of de facto parent provided by rule 1401(a)(4) of the California Rules of Court, the court stated that "`[t]he simple fact that a person cares enough to seek and undertake to participate goes far to suggest that the court would profit by hearing his views as to the child's best interests; if the participant lacks a close relationship with the child, that fact will undoubtedly emerge during the proceedings.'" (168 Cal.App.3d at p. 156, quoting Inre B.G. (1974) 11 Cal.3d 679, 692, fn. 18 [114 Cal.Rptr. 444,523 P.2d 244].)
Even though Charles S. had been evaluated and rejected as an appropriate placement, the court determined that "this has no bearing on his right to participate. . . ." (Charles S. v.Superior Court, supra, 168 Cal.App.3d at p. 156.)
Unlike Charles S., who had limited contact with the child, Gary has had a deep, close and continuing relationship with Robin throughout his life. (Cf. Charles S. v. Superior Court,supra, 168 Cal.App.3d at p. 156.) Under the facts of the instant case, it might have been a derogation of its duty for the trial court to have refused Gary's input as to Robin's best interests. *Page 1145 
Mary urges us to consider In re Jody R. (1990) 218 Cal.App.3d 1615
[267 Cal.Rptr. 746]. It is inapposite. Jody R. concerned the issue of whether the juvenile court has jurisdiction to order the involuntary joinder of a live-in companion of the minor's mother in an effort to secure the companion's compliance with a reunification plan. (Id., at p. 1619.) The court stated that, even if the court had such authority, the dependency statutes "would not be served by requiring the participation of an individual who has expressed little or no interest in the well-being of the child." (Id., at p. 1626.)
In dicta, however, Jody R., indicates that a juvenile court has jurisdiction to make orders that an inappropriate companion not reside in the home and have no contact with the child.
California Rules of Court, rule 1412(e) provides that "[u]pon a sufficient showing the court may recognize the child's presentor previous custodians as de facto parents and grant standing to participate as parties in disposition hearings and any hearingthereafter at which the status of the dependent child is at issue." (Italics added.)
As the court in In re Rachael C. (1991) 235 Cal.App.3d 1445, 1452 [1 Cal.Rptr.2d 473], explained, "in making the difficult decisions which it must make, a juvenile court can only benefit by having available to it all relevant information, including such information as a de facto parent may be able to present. [Citation.] A person who has undertaken the day-to-day responsibility and care for a child will often be in a unique position to present relevant information. [Citation.]"
"[T]he decision whether to grant de facto parent status cannot ignore the de facto parent's personal interest in the companionship, care, custody and management of the child, and thus cannot focus solely upon the child and the views of the government as to the child's best interests." The participation of a de facto parent may well determine what orders are made regarding future contact with the child. (In re Rachael C.,supra, 235 Cal.App.3d at p. 1452.)
Contemporaneity of de facto status with such determinations is not necessary. "[A] person will not necessarily lose the status of de facto parent merely because the child has been removed from his or her custody." (In re Rachael C., supra, 235 Cal.App.3d at p. 1453.) And, unlike the nine-month period of care given by the de facto parents in Rachael C., the limited contact inCharles S. and the involuntary joinder situation in Jody R.,
Gary has devoted five continuous years to develop, nurture and maintain a close, bonded relationship with Robin.
The issuance of continuing visitation orders at the hearing to dismiss the dependency was proper. That hearing fell under California Rules of Court, *Page 1146 
rule 1412(e) as a "hearing . . . at which the status of the dependent child is at issue."
The evidence overwhelmingly supports the order which calls for substantial continuing contact between Gary and Robin. Robin's therapist, Kathy Lipscomb, stated that it would be detrimental for Robin to lose contact with Gary. Gary has a very substantial parental relationship with Robin, and Robin needs consistent, regular contact with Gary to maintain his emotional development. Mary admits this is the considered opinion of the experts who became involved in this case.
That the juvenile court had the authority to establish the visitation order at issue is also supported by Welfare and Institutions Code section 362.4 It states, in pertinent part: "When the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child . . . the juvenile court on its own motion, may issue an order . . . determining the custody of, or visitation with, the child."
Even though Mary and Bruce D. were granted joint legal and physical custody of Robin, they are not unified in opposition to granting visitation rights to Gary. (Cf. In re Marriage ofGayden (1991) 229 Cal.App.3d 1510, 1520 [280 Cal.Rptr. 862].) Bruce supports Gary's substantial continuing contact and visitation with Robin, and the court expressly noted his position on this issue.
Even if both Mary and Bruce D. had opposed visitation to Gary, the court could have ordered it under Gayden. Said the Gayden
court: "As strong as the rights of such parents must be, there may be instances in which a child would be significantly harmed by completely terminating his or her relationship with a person who has (1) lived with the child for a substantial portion of the child's life; (2) been regularly involved in providing day-to-day care, nurturance and guidance for the child appropriate to the child's stage of development; and, (3) been permitted by a biologic parent to assume a parental role. The needs of thechild, which are the most important consideration, may sometimesrequire that a visitation award be made to such a `de factoparent.'" (In re Marriage of Gayden, supra, 229 Cal.App.3d at pp. 1521-1522, fn. omitted, italics added.) This is a case where the evidence mandates visitation to a de facto parent. (See alsoIn re Marriage of Halpern (1982) 133 Cal.App.3d 297, 311 [184 Cal.Rptr. 740], which although factually and legally dissimilar, supplies a similar test for determining de facto parentage which may be applicable in a family law setting.)
The record is replete with evidence which would satisfy theGayden test, and we shall not disturb the broad discretion accorded the trial court to make the orders of visitation before us here. (Welf. Inst. Code, § 362.4.) *Page 1147 
Although the particular facts of this case support the visitation order made here, courts must be cautious in making visitation orders which require a minor to be shuffled about among several caretakers. The value of regular visitation with such people should be carefully weighed against the potential unsettling effects of frequent changes in living arrangements.
The judgment is affirmed. The parties are to bear their own costs.
Gilbert, J., and Yegan, J., concurred.
A petition for a rehearing was denied July 24, 1992, and appellant's petition for review by the Supreme Court was denied September 23, 1992. *Page 1148