[No. A056944. First Dist., Div. Two. Aug. 31, 1993.]

In re HIRENIA C., a Person Coming Under Juvenile Court Law.
SONOMA COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
ROSALIE G. et al., Defendant;
EMMANUELLE ROSE, Movant and Appellant;
DEPARTMENT OF SOCIAL SERVICES et al., Interveners and
Respondents,

[No. A059717. First Dist., Div. Two. Aug. 31, 1993.]

In re HIRENIA C., a Minor, on Habeas Corpus.

**COUNSEL**

Rita Swenor, under appointment by the Court of Appeal, and Mat Swerling for Movant and Appellant in A056944 and for Petitioner in A059717.

No appearance for Plaintiff and Respondent in A056944.

Daniel E. Lungren, Attorney General, Stephanie Wald and Winifred Younge Smith, Deputy Attorneys General, for Interveners and Respondents in A056944 and for Respondent in A059717.

Donald W. Jenson for Interveners and Respondents in A056944.

Stephen Greenberg, under appointment by the Court of Appeal, for Minor.

OPINION

**PHELAN, J.**—Appellant Emmanuelle Rose timely appeals from an order denying her standing to participate in juvenile court proceedings with respect to a minor child, Hirenia C., as to whom appellant claims to be both a "person having an interest in a . . . dependent child," within the meaning of section 388 of the Welfare and Institutions Code,[1] and a de facto parent. ██ We reverse and remand for an evidentiary hearing to determine the merits of appellant's petition for visitation rights.[2]

### FACTUAL AND PROCEDURAL BACKGROUND

The following undisputed facts were before the juvenile court when it issued the order that is challenged in this appeal:

Hirenia C. was born on June 13, 1987, and placed approximately two weeks later in a foster care home which was shared by appellant and her "partner," Angela Ranaldi. Appellant herself is identified in court records as the person whose home was "found by this Court to be a fit and proper home" in which Hirenia could be and, in fact, was placed as of June 26, 1987.[3] Appellant and Ms. Ranaldi decided to pursue adoption of Hirenia, and—at the recommendation of a social worker—agreed that only Ms. Ranaldi's name would be used in proceedings to that end.

Hirenia was declared a dependent of the juvenile court in November 1987. In December 1987, appellant moved out of the home she had by that time shared with Hirenia and Ms. Ranaldi for over five months.[4] However, from January 1988 through March 1991—a period of more than three years—appellant continued to have frequent and continuous contact with Hirenia.

---

[1]Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

[2]We reject the argument of respondent state Department of Social Services that appellant has no standing to bring this appeal. An order denying a person the right to participate in a juvenile proceeding as a "de facto" parent is appealable by that person under section 395. (*In re Rachael C.* (1991) 235 Cal.App.3d 1445, 1454-1455 [1 Cal.Rptr.2d 473].) Insofar as it may be interpreted to preclude such an appeal, moreover, California Rules of Court, rule 1435(b) is, to that extent, void. (235 Cal.App.3d at p. 1455.) Accordingly, respondent's motion to dismiss this appeal is denied.

Also, in light of our disposition of this appeal, we do not need to reach the issues raised by the parties in connection with appellant's habeas corpus petition, No. A059717, which was filed in this court on November 20, 1992.

[3]Attached to appellant's habeas corpus petition is a copy of the foster home license issued on October 27, 1987, to her and Ms. Ranaldi jointly, for the "Rose and Ranaldi Foster Home."

[4]In a declaration filed with her habeas corpus petition, appellant further asserts that she, and not Ms. Ranaldi, was Hirenia's primary caregiver for the five months they all shared a household.

More specifically, appellant took care of Hirenia in her own residence approximately 130 days out of each year, from Friday evenings through Monday evenings on alternate weekends (for a total of approximately 78 days per year), plus an average of 1 additional weekday each week (approximately 52 days per year). With this ongoing contact, Hirenia came to know appellant as her "Mama."[5]

Hirenia's relationship with her biological parents, Rosalie G. and Jose C., was the subject of protracted dependency proceedings. Although the juvenile court established a permanent plan of adoption in April 1989, the culmination of the dependency proceedings did not come until March 1991, when the parental rights of Hirenia's father were terminated by default. The parental rights of Hirenia's mother were terminated after a trial on April 26, 1991.

In March 1991, Ms. Ranaldi began to limit appellant's access to Hirenia, allowing her only one evening visit per week in Ms. Ranaldi's home. On July 18, 1991, for reasons that do not appear in the record, Ms. Ranaldi cut off all contact between appellant and Hirenia.

Shortly thereafter, appellant began to search for legal recourse that would allow her to continue her relationship with Hirenia. She contacted the adoption social worker, who "initially expressed concern and interest over what had happened, but then eventually turned a 'deaf ear' to [her] complaints." In September 1991, appellant filed guardianship and adoption petitions in Sonoma County Superior Court.[6] Finally, on November 25, 1991, appellant appeared at a review hearing and filed the "Petition for Visitation Rights (W&I 362) and For Appointment of Attorney (W&I 317)," which is the subject of this appeal. Apparently in response to this petition, the juvenile court appointed counsel for Hirenia on November 25, 1991.

The juvenile court held a preliminary hearing on appellant's petition on January 14, 1992. At that hearing, both appellant's and Hirenia's counsel argued strenuously for a full-blown evidentiary proceeding to test appellant's assertions that she is a de facto parent, and that visitation by appellant would be in the best interests of Hirenia. Both Ms. Ranaldi and respondent state Department of Social Services (hereafter the department) vigorously

---

[5]In the juvenile court proceedings, appellant also presented four letters, bearing dates in July and August 1991, as testimonials to her good character and to the close bonding she claims to have with Hirenia. In her habeas corpus petition, appellant presents additional evidence to bolster her claim of de facto parenthood: She asserts that she was actively involved in Hirenia's cooperative preschool, and that Hirenia related to appellant's parents as her "grandma" and "grandpa."

[6]Appellant's guardianship and adoption petitions were subsequently withdrawn.

opposed the petition. However, neither Ms. Ranaldi nor the department presented any documentary or testimonial evidence to dispute appellant's factual assertions.[7] The juvenile court rejected appellant's and Hirenia's arguments and ruled, as a matter of law, that appellant did not have standing to bring the petition for visitation rights either as a de facto parent or as a "person having an interest . . . in a dependent child." The court further ruled that it would not be in Hirenia's best interests to entertain appellant's request for visitation. This appeal followed.

## DISCUSSION

A. *Appellant Has Standing to Bring a Petition for Visitation With Hirenia.*

Appellant first argues that the juvenile court erred in concluding that she lacked standing to bring her petition for visitation rights. We agree with counsel for Hirenia that the ruling below was analogous to an order sustaining a demurrer without leave to amend. Accordingly, for purposes of review, we must assume that the allegations of fact in the petition are true and independently determine whether they were sufficient to support a finding of "standing" for appellant under any legal theory. (See *Cellular Plus, Inc.* v. *Superior Court* (1993) 14 Cal.App.4th 1224, 1231-1232 [18 Cal.Rptr.2d 308].)

In the proceedings below, appellant cited three statutes as authorizing her petition: sections 362, 385, and 388. Respondent concedes that section 362 gives the juvenile court "the authority to order visitation with whomever it believes a dependent minor should see." Similarly, section 385 gives the juvenile court continuing jurisdiction to modify its dependency orders sua sponte. Section 388 authorizes "[a]ny parent or other person having an interest in a child who is a dependent child of the juvenile court" to bring a petition to "change, modify, or set aside any order of court previously made." Appellant relies primarily on section 388 for purposes of this appeal.

The department contends that none of these statutes requires the court to entertain appellant's request for visitation. The department first argues that appellant's petition was not one seeking to "change, modify, or set aside" an existing order, but rather one seeking new relief. We disagree. The petition sought to modify the permanent plan by expressly recognizing appellant's and Hirenia's interest in regular visitation with one another, an arrangement they had enjoyed until Ms. Ranaldi saw fit to exclude appellant from contact with the child.

---

[7] Nor does either respondent present any evidence in opposition to appellant's petition for habeas corpus.

The department further contends that the petition did not sufficiently allege a "change of circumstance or new evidence." We believe that appellant satisfied both of these threshold requirements. In her verified petition, appellant alleged that Hirenia's circumstances had changed in a very significant respect: She had been cut off from all contact with a caretaker who had been actively involved in her life for over three and a half years. The uncontroverted evidence of appellant's longstanding involvement in Hirenia's care and custody was arguably "new"—at least to the court—as well. Thus, appellant's petition was authorized by section 388.

The department disputes appellant's right to bring her petition on an even more fundamental level, however, by arguing that appellant did not have a sufficient "interest" in Hirenia to warrant her participation in the dependency proceedings either through a section 388 petition or, for that matter, at all. We disagree. We believe that the statutory grant of standing contained in section 388 is sufficiently broad to include appellant within its coverage. A fortiori, if appellant sufficiently alleged a de facto parent relationship with Hirenia, her standing to petition the court for visitation rights is established.

■ It is well settled that a de facto parent of a dependent minor has standing to participate as a party in juvenile court proceedings in which decisions about the care, custody, and control of the child will be made. (*In re B. G.* (1974) 11 Cal.3d 679, 693 [114 Cal.Rptr. 444, 523 P.2d 244]; *In re Joshuia S.* (1988) 205 Cal.App.3d 119 [252 Cal.Rptr. 106].) The term de facto parent was originally defined in *In re B. G.* as a "person who, on a day-to-day basis, assumes the role of parent, seeking to fulfill both the child's physical needs and his psychological need for affection and care." (*In re B. G., supra,* at p. 692, fn. 18.) However, it is not only the child's needs that are at stake in a determination of de facto parent status: "[T]he decision whether to grant de facto parent status cannot ignore the de facto parent's personal interest in the companionship, care, custody and management of the child, and thus cannot focus solely upon the child and the views of the government as to the child's best interests." (*In re Rachael C., supra,* 235 Cal.App.3d 1445, 1452; see also *In re B. G., supra,* at p. 693 [de facto parents should be permitted to participate in dependency proceedings "to assert and protect their own interest in the companionship, care, custody and management of the child"].)

Many of the early cases dealing with claims of de facto parenthood involved foster parents or blood relatives of the dependent child who had been excluded from various stages of the juvenile court proceedings. (*Katzoff* v. *Superior Court* (1976) 54 Cal.App.3d 1079 [127 Cal.Rptr. 178] [foster parents seeking to prevent removal of child they had cared for for

almost two years]; *Christina K. v. Superior Court* (1986) 184 Cal.App.3d 1463, 1468-1469 [229 Cal.Rptr. 564] [foster mother seeking to participate in review hearing]; *Charles S. v. Superior Court* (1985) 168 Cal.App.3d 151, 156-157 [214 Cal.Rptr. 47] [grandfather seeking to participate in permanency planning hearing].) More recently, it was held that de facto parent standing may be extended to a person who has no "officially recognized legal status," such as that of a guardian or foster parent (*In re Rachael C., supra,* 235 Cal.App.3d at p. 1448), and to persons who have cared for the child on less than a full-time basis (*In re Jody R.* (1990) 218 Cal.App.3d 1615, 1627 [267 Cal.Rptr. 746]; see also *Charles S., supra,* at pp. 155-156; *Guardianship of Phillip B.* (1983) 139 Cal.App.3d 407, 420-421 [188 Cal.Rptr. 781].)

The party seeking de facto parent status has the burden of proving, by a preponderance of the evidence, that he or she falls within the case law definition. (*In re Joshuia S., supra,* 205 Cal.App.3d at p. 125.) However, because the juvenile courts can only benefit from having all relevant information bearing on the best interests of the child, it has recently been observed that the concept of de facto parenthood must be applied liberally. (*In re Patricia L.* (1992) 9 Cal.App.4th 61, 67 [11 Cal.Rptr.2d 631].) Moreover, "a juvenile court should not refuse to permit a person to appear as a de facto parent out of fear that such participation will unduly interfere with the proceedings or with the goal of providing the child with a stable and loving home." (*In re Rachael C., supra,* 235 Cal.App.3d at p. 1452.) After all, if it later appears that the de facto parent's relationship with the child is not significant or substantial, or if it turns out that the information provided by the de facto parent is not helpful, the court need not give much weight to the input in making the difficult decisions it must make. (*In re Patricia L., supra,* at p. 67; *In re Rachael C., supra,* 235 Cal.App.3d at p. 1452.)

 Under the foregoing authorities, and assuming the truth of the factual allegations in the petition, it appears that appellant is a de facto parent to Hirenia. Along with Ms. Ranaldi, appellant raised Hirenia as her own child virtually from birth. Appellant was, in fact, the original foster mother and primary caregiver for the first five months of Hirenia's life. Even after she and Ms. Ranaldi separated, appellant continued her relationship with Hirenia—under a type of "joint custody" arrangement with her former partner—caring for the child on nearly a half-time basis for over three years. Appellant considered her relationship with Hirenia to be that of a mother and daughter, and Hirenia considered appellant her "Mama."

The fact that appellant was not currently acting in that capacity at the time of hearing does nothing to defeat her claim of de facto parenthood, especially in light of her allegations that it was only Ms. Ranaldi's interference

that prevented her from continuing her relationship with Hirenia. (*In re Robin N.* (1992) 7 Cal.App.4th 1140, 1145 [9 Cal.Rptr.2d 512]; *In re Rachael C.*, *supra*, 235 Cal.App.3d at p. 1453; see also Cal. Rules of Court, rule 1412(e) [the juvenile court may recognize the child's present or previous custodian as a de facto parent].) Nor is the fact that appellant was only a part-time caregiver between January 1988 and March 1991 an obstacle to a finding of de facto parenthood. (*In re Jody R.*, *supra*, 218 Cal.App.3d at p. 1627; see also *Guardianship of Phillip B.*, *supra*, 139 Cal.App.3d at pp. 420-421; *Charles S.*, *supra*, 168 Cal.App.3d at pp. 155-156.)

Finally, the fact that appellant asserted her claim relatively late in the dependency proceedings is not a bar to her participation as a de facto parent. In the first place, we note that section 388 contains no time limitation other than the requirement that the petition must be brought "in the same action in which the child was found to be a dependent child of the juvenile court." (§ 388.) In any event, appellant provided a clear and cogent explanation for the belated filing of her petition: There was no need to seek the assistance of the court so long as Ms. Ranaldi was honoring the "joint custody" arrangement under which she and appellant had cared for Hirenia for over three years. Once Ms. Ranaldi began to restrict appellant's access to Hirenia, appellant had no choice but to petition the court for formal recognition or risk being foreclosed permanently from contact with her "daughter." There is ample authority for such late-inning claims of de facto parenthood. (See, e.g., *Charles S.*, *supra*, 168 Cal.App.3d at pp. 155-156 [even though he had already been evaluated and rejected as an appropriate placement, grandfather was entitled to participate and present evidence in the permanency planning hearing after 16 months of dependency proceedings]; *Katzoff*, *supra*, 54 Cal.App.3d at p. 1079 [foster parents should have been allowed to appear and present evidence at an annual review hearing to contest removal of child they had by then cared for for almost 2 years].)

Even if appellant's relationship with Hirenia did not rise to the level of de facto parenthood, the undisputed facts presented in appellant's petition were certainly sufficient to establish appellant's standing as a "person with an interest" in Hirenia under section 388. (Cf. *Charles S.*, *supra*, 168 Cal.App.3d at pp. 155-156 [grandfather who did not technically qualify as a de facto parent should have been permitted to participate in dependency proceedings to make the court aware of " 'an important source of love, care and understanding' " for his grandchild, and to assert his own interest " '. . . in the companionship, care, custody and management of the child . . .' "].) She was clearly not a "stranger to the juvenile court" or just another member of the "general public," as the department would have us believe. We are satisfied that appellant's petition sufficiently alleged both an

"interest" in Hirenia's welfare, and appellant's own personal "interest" in a continuing relationship with the child. Accordingly, we hold that the juvenile court erred in ruling that appellant lacked standing to bring her petition for visitation rights.[8]

### B. *The Juvenile Court Abused Its Discretion by Denying Appellant's Petition Without a Hearing.*

■ Our conclusion that appellant has standing to bring a modification petition does not end our inquiry. To be entitled to a hearing on the merits of her petition, section 388 further requires appellant to make a prima facie showing that "the best interests of the child may be promoted by the proposed change of order." (*In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1416 [5 Cal.Rptr.2d 148].) "A petition for modification shall be liberally construed in favor of its sufficiency." (Cal. Rules of Court, rule 1432(a); *In re Jeremy W., supra*, at p. 1414.) If the petition presents "any evidence" that a hearing would promote the best interests of the child, the court must order a hearing. (*In re Heather P.* (1989) 209 Cal.App.3d 886, 891 [257 Cal.Rptr. 545].) "Indeed, to be entitled to a hearing on her petition, [appellant] needed only to show 'probable cause'; she was not required to establish a probability of prevailing on her petition." (*In re Jeremy W., supra*, at p. 1414, citing *Ansley* v. *Superior Court* (1986) 185 Cal.App.3d 477, 490 [229 Cal.Rptr. 771].)

Applying these standards, we believe that the juvenile court abused its discretion in denying appellant's petition without a hearing. If true, the allegations about Ms. Ranaldi's conduct in arbitrarily cutting Hirenia off from all contact with a person who had been steadily involved in raising her, and whom she recognized as one of her parents, were sufficient to establish that an order for continuing visitation with appellant may be in Hirenia's best interests.

The department strenuously objects to such a conclusion. Essentially, the department downplays appellant's evidence of her relationship with Hirenia, and questions appellant's motives in bringing the petition. Without any evidentiary basis whatsoever, the department boldly states that "appellant's

---

[8]Although the parties do not argue this point, we believe that Hirenia and/or her counsel would have had standing to bring the exact same petition appellant filed, seeking visitation with Hirenia's "Mama." Viewed from the child's perspective, moreover, it becomes all the more clear that the petition sufficiently alleged a "change of circumstances" and established that, at a minimum, a hearing was warranted to determine whether a visitation order would be in her best interests. Thus, our conclusion on the issue of standing is bolstered by the fact that Hirenia's counsel has provided unqualified support for appellant's position both in the juvenile court and in this appeal.

characterization of her relationship with Hirenia is untrue and misleading," and that appellant's petition "is motivated not by Hirenia's best interests but by her anger towards Angela Ranaldi." If there are significant factual disputes about the level of bonding between appellant and Hirenia and the effect on Hirenia of Ms. Ranaldi's conduct in severing that bond, such issues should have been resolved after an evidentiary hearing. Instead, "[t]he court merely heard the arguments of counsel, laden with factual assertions of a testimonial nature, and proceeded to rule in favor of the department." (*Katzoff, supra,* 54 Cal.App.3d at p. 1085.) As in *Katzoff,* we conclude that this was error. (See also *In re Jeremy W., supra,* 3 Cal.App.4th at pp. 1414-1416 [juvenile court abused its discretion by denying § 388 petition without a hearing].)[9]

### C. *This Appeal Is Not Moot.*

On July 23, 1993, after the parties had waived argument, the department moved for a second time to dismiss this appeal, this time on the ground that it is moot. In its motion, the department informed this court for the first time that the adoption petition of Ms. Ranaldi was granted by the Sonoma County Superior Court on March 15, 1993, and that dependency jurisdiction as to Hirenia was terminated on June 21, 1993. The department also reported that appellant's adoption petition was dismissed after the superior court over-ruled her objections to Ms. Ranaldi's petition on March 13, 1993.

Because there was no notice of appeal from the superior court proceedings, the adoption decree appears to be a final judgment. However, as of the date the department filed its motion to dismiss this appeal, the time for an appeal from the dismissal of dependency proceedings had not yet run. Accordingly, that order of the juvenile court was not yet final. ▮ On July 29, 1993, we ordered further briefing and argument to determine whether the issues presented in this appeal are moot. We conclude that they are not.[10]

▮ In juvenile cases, when an issue raised in a timely notice of appeal continues to affect the rights of the child or the parents, the appeal is not necessarily rendered moot by the dismissal of the underlying dependency

---

[9]Again, our conclusion on this issue is bolstered by the unqualified support Hirenia's counsel has provided for appellant's position. The combination of appellant's prima facie showing, and argument from the minor's unique vantage point, confirms us in our belief that a hearing is necessary to determine whether a visitation order would be in Hirenia's best interests.

[10]At oral argument on August 12, 1993, appellant's counsel represented that she would file a notice of appeal from the dismissal of dependency proceedings. That appeal will be consolidated with the instant proceedings.

proceedings. (See *In re James B.* (1986) 184 Cal.App.3d 524, 528 [229 Cal.Rptr. 206].) Rather, the question of mootness must be decided on a case-by-case basis. (*In re Angela R.* (1989) 212 Cal.App.3d 257, 264 [260 Cal.Rptr. 612].) ▮▮▮ In the instant case, whether it is in Hirenia's best interests to have visitation with appellant, and whether appellant was deprived of a substantial right when the juvenile court refused to recognize her as a de facto parent, are still very "live" controversies. Indeed, an additional issue that was tangentially relevant but not yet ripe for review when this appeal was filed, is whether a juvenile court order of visitation with a nonparent may be entered or continued in effect after the dependent child has been adopted by another person. That question is now ripe for decision, and we answer it in the affirmative.

As we have already discussed, the juvenile court was plainly authorized to enter the visitation order appellant requested in her petition, filed nearly two years ago, upon a showing that such an order would be in Hirenia's best interests. (§ 362.) Had the court done so following the hearing on the petition in January 1992, appellant and Hirenia would have enjoyed over 14 months of visitation before Ms. Ranaldi's adoption petition was granted. Once the adoption was finalized, however, the juvenile court was required to terminate its jurisdiction over Hirenia. (§ 366.3, subd. (a).)

▮▮▮ At that point, the issue became whether the juvenile court could still enter an enforceable order for visitation in favor of appellant, a nonparent, over the objections of the adoptive parent. We believe that the Legislature has provided the juvenile court with both the authority and the procedure to do so. (§ 362.4.) Under section 362.4, when the juvenile court terminates its jurisdiction over a dependent child, it may enter visitation orders that will be transferred to an existing family court file (*In re Roger S.* (1992) 4 Cal.App.4th 25, 30 [5 Cal.Rptr.2d 208]), *or* visitation orders that may be used as the basis for opening a superior court file (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712 [17 Cal.Rptr.2d 759]). Thereafter, the parties may seek the assistance of the superior court to enforce or modify the order. (*In re Michelle M.* (1992) 8 Cal.App.4th 326, 328 [10 Cal.Rptr.2d 64].)

More to the point, section 362.4 has been held to authorize a visitation order in favor of a de facto parent upon termination of dependency proceedings—even over the objections of the minor's biological parents. (*In re Robin N.* , *supra*, 7 Cal.App.4th 1140, 1146.) In that case, the court affirmed a juvenile court judgment which terminated dependency proceedings, awarded joint legal and physical custody to the child's biological parents, and—over the natural mother's objections—granted visitation rights to an unrelated third party who had maintained a deep, close and continuing

relationship with the child throughout his life. The visitation order was deemed permissible despite the fact that there remained "ongoing friction" between the biological mother and the de facto parent. (*Id.* at p. 1143.)

■ The department does not even acknowledge this recent trend of decision, relying instead on the general proposition that an adoptive parent, such as Ms. Ranaldi, has the unfettered right to determine who shall visit with her child once the adoption has become final. Citing *Estate of Stanford* (1957) 49 Cal.2d 120, 135 [315 P.2d 681], and *In re Marriage of Gayden* (1991) 229 Cal.App.3d 1510, 1517 [280 Cal.Rptr. 862], the department further contends that the whole concept of visitation rights is "totally inconsistent" with the parent-child relationship that has now been established.

■ We have, of course, held that courts must give a large measure of deference to parental autonomy when considering a contested issue of visitation rights for a nonparent. (*In re Marriage of Gayden, supra,* 229 Cal.App.3d at p. 1517.) However, we were careful to limit our holding in that case with an observation that courts are not required to submit in every case to the objection of a biologic or adoptive parent to a visitation award to another person with whom the minor has developed a close attachment. (*Id.* at p. 1521.) "As strong as the rights of such parents must be, there may be instances in which the child would be significantly harmed by completely terminating his or her relationship with a person who has (1) lived with the child for a substantial portion of the child's life; (2) been regularly involved in providing day-to-day care, nurturance and guidance for the child appropriate to the child's stage of development; and (3) been permitted by a biologic [or adoptive] parent to assume a parental role. The needs of the child, which are the most important consideration, may sometimes require that a visitation award be made to such a 'de facto parent.'" (*Id.* at pp. 1521-1522.)

■ Given the undisputed evidence of appellant's relationship with Hirenia, it is possible that a visitation award is still warranted in this case. For three and a half years, by agreement with Ms. Ranaldi, appellant was intimately involved in Hirenia's day-to-day care, nurturance and guidance. During that period, in fact, it appears that appellant's involvement as a de facto parent was nearly equal to that of Ms. Ranaldi. It also appears that Hirenia formed a close, bonded relationship with appellant. Further, beyond the department's rhetoric, there is no evidence of undue hostility between appellant and Ms. Ranaldi. Even if it there were some conflict between the parties, it would nevertheless be permissible to enter a visitation award in favor of appellant if she is able to establish a substantial parental relationship

with Hirenia, continuation of which would be in Hirenia's best interests. (*In re Robin N.*, *supra*, 7 Cal.App.4th at p. 1146.)

Thus, if on remand the juvenile court finds on the basis of competent evidence that it would be in Hirenia's best interests to have visitation with appellant, it may enter an order to that effect even as it is closing its file on this matter. Indeed, it would likely be reversible error for the juvenile court to refuse to hear evidence which is relevant to the formulation of an appropriate "exit" order regarding visitation. (*In re Roger S.*, *supra*, 4 Cal.App.4th at pp. 30-31.)

## CONCLUSION

For all the foregoing reasons, we reverse the judgment of the juvenile court, and remand for an evidentiary hearing on appellant's petition for visitation.

Kline, P. J., and Smith, J., concurred.