Filed 6/18/21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re B.S., a Person Coming Under the Juvenile Court Law. | C091678 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>L.S.,<br><br>        Defendant;<br><br>T.W.,<br><br>        Intervener and Appellant. | (Super. Ct. No. JD239590) |

APPEAL from a judgment of the Superior Court of Sacramento County, Shama Hakim Mesiwala, Judge. Dismissed.

Kimball J.P. Sargeant, under appointment by the Court of Appeal, for Intervener and Appellant.

Lisa Travis, County Counsel, Traci Lee, Assistant County Counsel, and Nicole Roman, Deputy County Counsel, for Plaintiff and Respondent.

Jamie A. Moran, under appointment by the Court of Appeal, for Minor.

1

T.W., the de facto parent of the minor, appeals from the juvenile court's order removing the minor from his and his wife's care and placing the minor with her maternal relatives. He contends the juvenile court abused its discretion in entering the orders and that placement with the maternal relatives was not in the minor's best interests. The respondent Sacramento County Department of Child, Family and Adult Services elected not to file an appellate brief, as its position was aligned with appellant's position at the contested hearing giving rise to this appeal. The respondent minor, who argued in favor of placement with the maternal relatives, contends appellant does not have standing to raise the issue of placement in this appeal and, in any event, the juvenile court did not abuse its discretion in ordering placement with the maternal relatives. We conclude appellant lacks standing to contest the placement order, and dismiss the appeal.

BACKGROUND

In light of our resolution of this appeal, we provide an abbreviated summary of the factual and procedural background.

The minor in this case was born in January 2019 and tested positive for methamphetamine at birth. Mother, who was reportedly homeless, checked herself out of the hospital, against medical advice, stating she would not return for the minor. Mother did not provide any information to identify the minor's father and her whereabouts were unknown.

The Sacramento County Department of Child, Family and Adult Services (Department) filed a Welfare and Institutions Code section 300 petition on behalf of the minor pursuant to subdivisions (b) (failure to protect), (g) (no provision for support), and (j) (abuse or neglect of siblings), as the minor had five half siblings involved in earlier juvenile dependency cases with whom mother had failed to reunify.[1] There were a

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

number of potential relative placement possibilities, including the maternal great aunt and great uncle (referred to herein as the maternal relatives) who were present at the detention hearing and had guardianship of one of the minor's half siblings. The juvenile court ordered the Department to assess the relatives seeking placement and ordered twice-weekly visits for the maternal relatives. The minor was detained and placed by the Department in a licensed foster home with a foster parent who indicated uncertainty as to whether he was interested in adoption.

The juvenile court assumed jurisdiction, declared the minor a dependent, ordered the minor removed from parental custody and bypassed mother, whose whereabouts remained unknown, for reunification services. The resource family approval (RFA) referral for the maternal relatives remained open. The maternal great aunt was identified as the educational and developmental rights holder for the minor. The juvenile court advised the parties it wished to explore relative placement, and conduct a full hearing on the issue, adding that if the minor can be placed with relatives in a home with a half sibling, that would seem to be in the minor's best interest. The court set the matter for a section 366.26 hearing.

The Department determined there was an impediment to placement with the maternal relatives, in that an individual with a nonwaivable conviction still resided in the home. Although the RFA assessment was still pending, the Department had decided not to recommend placement with the maternal relatives and, in March 2019, reduced their visitation to one visit per month. The juvenile court continued the relative placement hearing and ordered the Department to address the impediments to placement with the maternal relatives.

The Department reported that the RFA assessment was still pending. Approval of the maternal relatives' home had been denied because an individual with a criminal background was residing in the home. That individual, however, had moved out of the home three days after the denial. The maternal relatives had filed a grievance request to

3

seek review of the denial. In the meantime, the Department located a concurrent foster home that was interested in adoption and moved the minor to that home (the home of appellant & his spouse) at the end of April 2019.

On May 10, 2019, the juvenile court noted the pending grievance filed by the maternal relatives, continued the relative placement hearing, and increased the maternal relatives' visitation to twice per month. Due to the continued pending status of the RFA assessment, the juvenile court continued the relative placement hearing seven more times and, despite opposition by the Department, increased the maternal relatives' visitation to once a week, supervised, in August 2019 and to once a week for three hours, unsupervised, in September 2019.

On November 20, 2019, appellant and his spouse filed a request to be declared the minor's de facto parents. The RFA remained pending and, on November 22, 2019, the juvenile court again continued the matter, asking the Department to provide additional information regarding the RFA process. The juvenile court also granted appellant's de facto parent request.

On January 10, 2020, the juvenile court ordered maternal relatives to be provided weekly Saturday unsupervised visits from 9:00 a.m. to 6:00 p.m. and again continued the matter in order to receive further information from the Department regarding the still pending RFA. On January 15, appellant filed a request to be designated the minor's prospective adoptive parent. The juvenile court set the hearing on the request to coincide with the continued section 366.26 hearing.

After one final continuance, the RFA process was complete with the maternal relatives' home approved for placement, and the combined relative placement hearing and section 366.26 hearing took place on March 5, 2020. The Department opposed placement with the maternal relatives and requested the minor remain placed, in a plan of adoption, with appellant and his spouse. The minor's counsel argued in favor of placing the minor with the maternal relatives. The juvenile court determined placement with the

maternal relatives and her sibling was in the minor's best interests and ordered the minor moved to the home of the maternal relatives. It then terminated parental rights and ordered the minor freed for adoption. The minute order reflects appellant's request for prospective adoptive parent status was thereafter denied.

## DISCUSSION

Appellant contends the juvenile court abused its discretion in removing the minor from his and his wife's care and placing the minor with her maternal relatives. The minor contends this appeal must be dismissed because appellant does not have standing to appeal the juvenile court's placement order. The minor is correct.

"A 'lack of standing' is a jurisdictional defect." (*Hudis v. Crawford* (2005) 125 Cal.App.4th 1586, 1592.) When an appellant lacks standing, the appeal is subject to dismissal. (*Ibid.*)

In juvenile proceedings, only a party aggrieved by an order has standing to appeal. (*In re Harmony B.* (2005) 125 Cal.App.4th 831, 837.) "To be aggrieved, a party must have a *legally cognizable interest* that is injuriously affected by the court's decision. [Citation.] The injury must be immediate and substantial, and not nominal or remote." (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 948, italics added.) "An appellant must show prejudicial error affecting his or her interest in order to prevail on appeal. [Citation.] An appellant cannot urge errors which affect only another party who does not appeal." (*In re Vanessa Z.* (1994) 23 Cal.App.4th 258, 261.)

In *In re B.G.* (1974) 11 Cal.3d 679, the California Supreme Court first addressed the issue of whether foster parents should be permitted to participate as parties in juvenile proceedings. (*Id.* at pp. 692-693.) Recognizing that biological parenthood is not the sole prerequisite for developing "a strong concern for the welfare of [a] child," the court noted that "a person who assumes the role of parent, raising the child in his [or her] own home, may in time acquire an interest in the 'companionship, care, custody and management' of that child." (*Id.* at p. 692, fn. omitted.) Referring to these individuals as "de facto

5

parents," the court stated that these "de facto parents . . . should be permitted to appear as parties in juvenile court proceedings . . . to assert and protect their own interest in the companionship, care, custody and management of the child." (*Id.* at p. 693, fn. omitted.) In reaching this conclusion, the court emphasized that "[t]he juvenile court in a dispositional hearing must undertake 'a judicious appraisal of all available evidence bearing on the child's best interests' including an evaluation of the relative merits of alternative custody awards. [Citation.] The presence of de facto parents will aid the court in that endeavor; the views of such persons who have experienced close day-to-day contact with the child deserve consideration; moreover, an award of custody to such de facto parents is often among the alternate dispositions which the court must evaluate." (*Ibid.*)

The holding of *In re B.G.* was subsequently reflected in the California Rules of Court, which now provide: " 'De facto parent' means a person who has been found by the court to have assumed, on a day-to-day basis, the role of parent, fulfilling both the child's physical and psychological needs for care and affection, and who has assumed that role for a substantial period." (Cal. Rules of Court, rule 5.502(10).) "On a sufficient showing, the court may recognize the child's present or previous custodian as a de facto parent and grant him or her standing to participate as a party in the dispositional hearing and any hearing thereafter at which the status of the dependent child is at issue. The de facto parent may: [¶] (1) Be present at the hearing; [¶] (2) Be represented by retained counsel or, at the discretion of the court, by appointed counsel; and [¶] (3) Present evidence." (Cal. Rules of Court, rule 5.534(a)).

In *In re Kieshia E.* (1993) 6 Cal.4th 68 (*Kieshia E.*), the California Supreme Court clarified that a de facto parent's standing is limited by the *rationale* underlying the de facto parent doctrine itself: "The de facto parenthood doctrine simply recognizes that persons who have provided a child with daily parental concern, affection, and care over substantial time may develop legitimate interests and perspectives, and may also present

6

a custodial alternative, which should not be ignored in a juvenile dependency proceeding. *The standing accorded de facto parents has no basis independent of these concerns*." (*Id.* at pp. 77-78, italics added.)

"De facto parents are not equated with biological parents or guardians for purposes of dependency proceedings and standing to participate does not give them all of the rights and preferences accorded such persons." (*In re Rachael C.* (1991) 235 Cal.App.3d 1445, 1452, disapproved on other grounds in *Kieshia E., supra*, 6 Cal.4th at p. 80.) De facto parent status does not give the de facto parent the right to reunification services, visitation, custody, or placement of the minor, "or to any degree of independent control over the child's destiny whatsoever." (*Kieshia E.*, at p. 77; *id.* at p. 77, fn. 7; *id.* at p. 82 (dis. opn. of Kennard, J.); *In re Cynthia C.* (1997) 58 Cal.App.4th 1479, 1490-1491 & fn. 11; *Clifford S. v. Superior Court* (1995) 38 Cal.App.4th 747, 752.) De facto parent status "merely provides a way for the de facto parent to stay involved in the dependency process and provide information to the court." (*In re Bryan D.* (2011) 199 Cal.App.4th 127, 146.)

In *In re P.L.* (2005) 134 Cal.App.4th 1357, 1361, the Fourth District, Division Two expressly held that a de facto parent does *not* have standing to appeal a placement decision. In *In re P.L.,* a newborn baby was placed in the home of the foster mother. A selection and implementation hearing was set when the minor was just over one year old and the agency began the adoption assessment. (*Id.* at p. 1359.) Although the foster mother had initially said she wanted to adopt the baby, she had some concerns. Accordingly, the agency located new prospective adoptive parents. (*Id.* at pp. 1359-1360.) The foster mother changed her mind and advised the agency she wanted to adopt the baby. At a placement review hearing, the agency recommended a change in placement to the new prospective adoptive parents, which the juvenile court ordered. The foster mother, who had been granted de facto parent status, appealed. (*Id.* at pp. 1360-1361.)

In concluding the foster/de facto parent lacked standing to contest the placement change on appeal, the *In re P.L.* court reiterated the rights of de facto parents in dependency court: "De facto parents have limited rights that include: (1) the right to an attorney; (2) the right to be present at hearings; and (3) the right to present evidence and be heard. Specifically, they do not have the right to reunification services, *custody,* or visitation. [Citations.] While de facto parents are given an opportunity to participate in the proceedings, that status does not give them the rights accorded to a parent or legal guardian. [Citations.] Consequently, appellant has no legal standing to complain of the decision to place the child with the new prospective couple since she has no right to custody or continued placement as a mere de facto parent. The order changing physical custody was within the sound discretion of the court from which appellant cannot appeal because her legal rights were not impacted." (*In re P.L., supra*, 134 Cal.App.4th at pp. 1361-1362.)

Relying on the reasoning in *In re Vincent M.* (2008) 161 Cal.App.4th 943 (*Vincent M.*), appellant contends he *does* have standing to bring the instant appeal. In that case, the newborn minor had been declared a dependent of the court after the mother had surrendered the baby, Vincent, under the safe surrender law. Vincent's father was unknown. Reunification services were denied, and a section 366.26 hearing was scheduled with a permanent plan of adoption. Vincent was placed with the appellants who had been granted de facto parent status. (*Vincent M.,* at p. 948.) Several months later, Vincent's biological father came forward and filed a section 388 petition requesting that he be declared the presumed father and be granted reunification services. The court granted the petition and the de facto parents appealed. (*Vincent M.,* at pp. 949-950.)

The Second District, Division Five, addressed the de facto parents' standing and concluded the de facto parents' "rights and interests were injuriously affected by the dependency court's ruling. They provided a home for Vincent since he was four days old and abandoned by mother. At disposition, the case proceeded directly to permanency

8

planning on a track of adoption by the [de facto parents].  As the people who, 'on a day-to-day basis, assume[d] the role of parent, seeking to fulfill both [Vincent's] physical needs and his psychological need for affection and care,' [they] were granted de facto parent status.  [Citation.]  They completed an adoption home study and were approved to adopt Vincent.  Unlike the circumstances in *In re P.L., supra,* 134 Cal.App.4th at pages 1359-1360, [appellants] always intended to adopt Vincent, and Vincent was placed there with the expectation it was an adoptive home.  The dependency court permitted [appellants] to litigate in opposition to the section 388 petition, gave them access to the court file to facilitate their participation, and told them they could appeal the decision on the section 388 petition.  The ruling granting the section 388 petition vacated the orders for permanency planning services and setting a section 366.26 hearing to select a permanent plan, thus taking the case off the adoption track.  Services would be ordered whose goal is removing Vincent from the [de facto parents] and giving custody to [father].  As prior final orders are not reviewable in an appeal of a subsequent order, the [de facto parents] will be foreclosed from obtaining a ruling on the correctness of granting this section 388 petition if they cannot proceed in the instant appeal.  [Citation.]" (*Vincent M., supra*, 161 Cal.App.4th at p. 953.)

The dissent in *Vincent M.* disagreed with the majority's conclusion the de facto parents had standing to contest the juvenile court's order on appeal.  The dissent explained that the de facto parents had no legal right to adopt Vincent and therefore could not show how their legal interests were aggrieved.  (*Vincent M., supra*, 161 Cal.App.4th at p. 962 (dis. opn. of Armstrong, J.)  After distinguishing the cases cited by the majority, the dissent concluded, "In sum, because [the de facto parents] have no legal right to adopt Vincent, their legal interests are not aggrieved by the juvenile court's orders, despite the emotional pain they quite understandably feel at the possibility that they may not be able to adopt this child." (*Id.* at p. 964.)

We agree with *In re P.L.* and the dissent in *Vincent M.* While de facto parents may *feel* aggrieved and, no doubt, may be *emotionally* affected by court orders affecting the custody of a minor, a de facto parent has no standing to appeal a custody decision because they cannot show how their *legal* rights were injuriously affected.

Appellant contends his legal rights were affected because, due to the court's order changing placement of the minor, his request for designation as the minor's prospective adoptive parent was implicitly denied. This is not, however, an appeal from an allegedly erroneous denial of a request for designation as the minor's prospective adoptive parent. (See § 366.26, subd. (n) [court may designate current caretaker as prospective adoptive parent at or after the § 366.26 hearing].) Nor is it an extraordinary writ petition challenging a post termination of parental rights change of placement.[2] We reject appellant's attempt to bootstrap legal rights he *may* have had at a later date had the court *not* ordered the change in the minor's placement prior to termination of parental rights.

In sum, we conclude that appellant's status as a de facto parent did not give him a right to custody or the minor's continued placement with him. Rule 5.534(a) of the California Rules of Court entitled him, as a de facto parent, to participate as an interested party in the dispositional and subsequent hearings, with the right to be present at the hearing, be represented by counsel, and present evidence. Appellant does not contend he was deprived of any of these rights. As he was not entitled to any additional protection

---

[2] A person who has been designated as a prospective adoptive parent, or current caretaker who meets the criteria, is entitled to notice before the minor can be removed from his or her home and, upon request, a hearing to challenge the removal and, in the case of a current caretaker, to be designated as a prospective adoptive parent. (§ 366.26, subd. (n)(3).) This provision does not apply when a child is removed from *potential* prospective adoptive parents *prior* to the termination of parental rights. (*In re Jayden M.* (2014) 228 Cal.App.4th 1452, 1457-1459; *In re M.M.* (2015) 235 Cal.App.4th 54, 61-62.) Furthermore, a juvenile court's placement order, entered *after* termination of parental rights, is not appealable, but rather, must be reviewed by way of a petition for extraordinary writ. (§ 366.28, subd. (b)(1).)

10

regarding the minor's continued placement in his home, he lacks standing to contest the juvenile court's placement order.

## DISPOSITION

The appeal is dismissed.


  /s/
HOCH, J.


We concur:


  /s/
RAYE, P. J.


  /s/
HULL, J.